1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL RHINE,

                       Plaintiff,

    v.

PETE BUTTIGIEG, in his official capacity
as Secretary of the United States Department
of Transportation,

                Defendant.

CASE NO. 2:20-cv-01761-RAJ-BAT

**REPORT AND
RECOMMENDATION GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Defendant Pete Buttigieg, Secretary of the United States Department of Transportation

("DOT") moves for summary judgment dismissal of Plaintiff Daniel Rhine's claims that the

DOT's Federal Aviation Administration ("FAA") violated Title VII of Civil Rights Act of 1964

(asserting claims of disparate treatment, hostile work environment, and retaliation). Dkt. 22.

Rhine opposes the motion (Dkt. 66-1 (Corrected Response)), and Defendant replied (Dkt. 68).

Based on the parties' briefs, summary judgment evidence, and balance of the record, the

undersigned recommends that the motion be **granted**.

<u>PROCEDURAL HISTORY AND SCOPE OF REVIEW</u>

Rhine worked for the FAA from 2010 until 2019, when the FAA removed him from

federal service after an investigation revealed Rhine had misused government equipment and

time on a personal house-flipping business, gambling pools, and graduate coursework,

misrepresented his time and attendance, taken food that was not his out of common-area

refrigerators, and then failed to show candor when confronted with that misconduct. Dkt. 23-24,

Strong Decl., Ex. N. Rhine admitted and apologized for committing the infractions. MSPB Tr. Vol. V., p. 15 (Holguin); Ex. AA to Strong Decl. (10/30/19 Rhine response to proposed removal).

After his removal from federal service on November 22, 2019, Rhine challenged his removal in a "mixed-case" appeal with the Merit Systems Protection Board ("MSPB") on December 26, 2019. Rhine also claimed the FAA had discriminated and retaliated against him. Dkt. 1 at 10. After a hearing, the administrative law judge ("ALJ") found the FAA had proven all misconduct charged and Rhine's "penalty of removal was not arbitrary and was within the bounds of reasonableness under the circumstances." The ALJ also found Rhine failed to prove his affirmative defenses of discrimination and retaliation. *Rhine v. Dep't of Transp.*, Case No. SF-0752-20-0174-I-1, 2020 WL 5879750 (MSPB Sept. 29, 2020). The MSPB affirmed on November 3, 2020, and Rhine filed his Complaint herein on November 30, 2020. Dkt. 1.

In his Complaint, Rhine alleges the FAA engaged in disparate treatment when it failed to address his complaints of sex-based harassment by Gina Perez (another FAA employee and former girlfriend) and instead, addressed Perez's complaint of harassment by him. Rhine also alleges the FAA sexually discriminated against him by targeting his workplace behavior while ignoring his allegations of Perez's workplace violations. Dkt. 1 at 11. Rhine contends he was engaged in a protected activity (*i.e.*, making complaints of discrimination and harassment from January 2019 through August 2019) when the FAA took retaliatory steps to scrutinize his work and ultimately terminate his employment. *Id*. at 11-1.[1]

---

[1] In his response, Rhine "stipulates to dismissal of his claims of race and/or disability discrimination under the Civil Rights Act and the Rehabilitation Act." Dkt. 66-1 n.1. Though Rhine raised these affirmative defenses in the MSPB proceedings, he did not assert these claims in his Complaint. *See* Dkt. 1.

Rhine "is *not* challenging any actions by the MSPB here", but "filed this case for a *de novo* hearing on his EEO claims as authorized by law." Dkt. 66-1, p. 15. Rhine correctly states the standard of review but devotes much of his opposition and evidence to a 2015 EEO Complaint and the FAA's investigation of that Complaint. Defendant argues Rhine cannot revive long-resolved claims outside of this Court's jurisdiction. The Court agrees as Rhine did not exhaust his administrative remedies relating to the earlier, settled EEO Complaint.

Rhine filed an EEO Complaint in 2015, alleging Perez made harassing statements about him. Dkt. 1, ¶ 4.8; Dkt. 4, Answer ¶ 4.8 (admitting Rhine made an informal complaint to the EEOC in 2015 against Perez claiming a hostile work environment). Perez had applied for an anti-harassment order against Rhine in state court, which the court denied. MSPB Tr. Vol. II, p. 202 (Perez). Also, in 2016, Rhine received a management instruction that he was not to visit the third floor of the FAA building and that he should coordinate meetings with Engineering Services in advance so that he could be escorted to such meetings. Ex. E to Strong Decl. (Poole Dep.), 77:6-78:22; Ex. FF (6/30/16, 7/21/17 emails regarding restrictions). The FAA later relaxed these restrictions in 2017. *Id.*

The FAA and Rhine agreed to settle the EEO Complaint in January 2016. As part of the settlement, the FAA agreed to investigate whether Perez spoke negatively of Rhine and if she had subordinates who felt bullied or reprised against because of her past relationship with Rhine. MSPB Tr. Vol. I, p. 206 (Rhine); Ex. BB to Strong Decl. (1/19/16 Resolution Agreement).

Rhine filed two appeals claiming the FAA breached the settlement by not properly performing its investigation. MSPB Tr. Vol. I, pp. 207-09 (Rhine). The DOT found no breach and the Office of Federal Operations affirmed. Dkt. 23, Strong Decl., Ex. CC (7/22/16 first breach decision); Ex. DD (8/24/16 second breach decision); Ex. EE (12/2/16 Ltr. from OFO

1    affirming no breaches). Rhine was advised of his right to appeal these decisions (*i.e.*, within 30

2    days to the Office of Federal Operations or within 90 days in a civil suit in the appropriate U.S.

3    District Court). *See, e.g.*, *id.*, Ex. DD, pp. 3-4.

4        Rhine did not appeal and did not pursue his administrative remedies as to any aspect of

5    his 2015 EEO Complaint or the FAA's 2016 investigation. Because he failed to exhaust his

6    administrative remedies, the district court cannot adjudicate it now. *Brown v. Gen. Servs. Admin*.,

7    425 U.S. 820, 832, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976) (Title VII grants an aggrieved federal

8    employee the right to file suit in federal district court, *see* 42 U.S.C. § 2000e-16(c), but before

9    doing so the employee must exhaust his administrative remedies against his federal employer);

10   *see also*, *Fitzgerald v. U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997) ("Thus,

11   if a federal employee fails to exhaust his administrative remedies, the district court cannot

12   adjudicate the claim.")

13       Additionally, Rhine did not exhaust his administrative remedies on this claim by filing

14   his MSPB appeal. When a federal employee claims he has been affected by both an "adverse

15   employment action" and a related Title VII violation, administrative remedies may be exhausted

16   for Title VII purposes by asserting both claims before the MSPB. *McAdams v. Reno*, 64 F.3d

17   1137, 1141 (8th Cir.1995); 29 C.F.R. § 1614.302 (1997). When he challenged his removal before

18   the MSPB, Rhine asserted affirmative defenses of due process violation; harmful procedural

19   error; EEO retaliation; discrimination based on race (Caucasian), sex (male), and disability;

20   whistleblower retaliation; and violation of merit system principles. During the MSPB

21   proceeding, Rhine unsuccessfully argued that his "previous history of filing an EEO complaint"

22   was a motivating factor in the FAA's retaliation against him. However, his claim that the FAA

23   failed to properly investigate his 2015 EEO complaint was not raised as a separate Title VII

claim. Thus, the Court's *de novo* review is limited to the exhausted Title VII claims asserted in Rhine's Complaint, which he alleges occurred because he made complaints of discrimination and harassment from January 2019 through August 2019. *Id*. at 11-1.

## FACTS

Rhine worked as an aviation technical systems specialist (or program implementation manager ("PIM")) for the FAA until his removal from federal service in 2019. Dkt. 23, Ex. A to Strong Decl. (Pl. Dep.), 26:15-27:10. Monica Holguin was Rhine's immediate supervisor (since December 2018) and she was the official who first proposed and then decided to remove him. *Id*., Strong Decl., Ex. B (Holguin Dep.) at 21:9-17; Ex. M (10/15/19 notice of proposed removal); Ex. N (11/22/19 removal ltr.). Richard Van Allman served as Rhine's second-line supervisor (since 2018) and had a role in the decision to begin the investigation that led to Rhine's removal. *Id*., Ex. J to Strong Decl. (MSPB Tr. Vol. III), p. 92 (Van Allman testimony).

A.    FAA Investigation and Removal of Rhine

1.    Late Night Email

In February 2019 Rhine exchanged emails with some other FAA employees from the Real Estate Branch (who were outside his working group) about a work project in California. Dkt. 23, Strong Decl., Ex. C (Van Allman Dep.) at 67:6-68:8; Ex. P (2/20/19 Rhine, Van Allman emails). Twenty-four hours after he last received a response in this string, Rhine sent an email to the Real Estate manager, copying Van Allman and Thomas Poole.[2] *Id*., Ex. P. Rhine's email to the Real Estate manager opened with "I'm fatigued of your team's 4 year history of false claims that stem from continued sexual harassment." *Id*. Rhine went on to tell the manager that "my

---

[2] Rhine's immediate supervisor before Holguin. Dkt. 23, Ex. H to Strong Decl. (MSPB Tr. Vol. I), p. 202 (Rhine).

long term request of you is to [sic] you rectify both the performance and conduct issues within your team before you allow staff to continue suggesting that my requests aren't made in a timely fashion." *Id*. No prior messages in the email string referenced false claims or sexual harassment. *Id*. Later the same day Rhine sent his email, Van Allman responded. *Id.* Van Allman noted that he had spoken with both the Real Estate manager and Poole, and neither had "any knowledge of specific allegations of false claims, sexual harassment, performance or conduct issues" referred to in Rhine's email. *Id*. Van Allman admonished Rhine that his statements were inappropriate for this email string and directed Rhine on where he could report any sexual harassment claims. *Id*.

Later that night, at 11:16 P.M., Rhine sent an email apologizing for his previous statements. Dkt. 23, Ex. C, Van Allman Dep., 89:1-24; Ex. Q to Strong Decl. (2/20/19 Rhine apology email). The timing of the apology raised other concerns for Van Allman because Rhine sent it so late at night. *Id.*, Van Allman Dep., 90:13-91:19 (explaining that the late-hour email concerned him because he wanted to ensure employees were properly compensated for working outside core business hours and Rhine could possibly have a grievance under the collective bargaining agreement). The FAA conducted a threat assessment meeting regarding Rhine and his late hours around February 21. *Id.*, 110:10-117:6. The FAA took no further steps at that time. MSPB Tr. Vol. III, pp. 126-27 (Van Allman).

2.    Security Footage of Rhine at FAA Building on Fifth Floor

Rhine went to the FAA building on Saturday, March 2, 2019. Dkt. 23, Strong Decl., Ex. I, (MSPB Tr. Vol. II), pp. 128-29; Ex. R (3/2/19 video). Security footage captured Rhine entering a common area kitchenette on the fifth floor (Rhine worked on the fourth floor) with one grocery bag. MSPB Tr. Vol. II, p. 95; Dkt. 23, Strong Decl., Exs. R, M. While Rhine was in the kitchenette, Gina Perez, an attorney with the FAA, left her office on the fifth floor to go to

the kitchenette. *Id.*, Ex. R. Perez and Rhine had been in a relationship, which ended in 2014. MSPB Tr. Vol. II, p. 192 (Perez testimony). The security footage captured Perez stopping at the door to the kitchenette and turning around back to her office. *Id.*, pp. 128-29. Approximately a minute after he entered the kitchenette, Rhine left the area with two grocery bags, which appeared full. *Id.* Later that day, Perez emailed Jason Thompson, a former investigator at the FAA who had handled an investigation of Perez based on Rhine's EEO complaint in 2016, that she had seen Rhine in the kitchenette. *Id.*, Strong Decl., Ex. H (MSPB Tr. Vol. I), pp. 74-76; MSPB Tr. Vol I, p. 5 (Dillon testimony[3]); Ex. S (3/2/19, 3/4/19 Perez emails).

The following Monday, March 4, Perez forwarded the email to Kirsten Kenny, another investigator at the FAA, who in turn passed the report to Van Allman. *Id.* Director Clark Design authorized an investigation that same day, requesting the investigators look into Rhine's long hours at the FAA building (to include any personal or personal business usage of government equipment) as well as issues of potential theft and to determine if there was a threat to Perez. *Id.*, Van Allman Dep., 124:22-125:10; Ex. T to Strong Decl. (5/17/19 ROI). Also on March 4, Suzanne Lee-Pang, Rhine's acting manager, informed Rhine that he should only access the FAA building during the core business hours of 6:00 A.M.-6:00 P.M. MSPB Tr. Vol. III, pp. 130-131 (Van Allman); Dkt. 23, Ex. U (3/4/19 email regarding building access). Rhine testified he received notice of the investigation on March 4. MSPB Tr. Vol. II, p. 95 (Rhine); *see also* Dkt. 23, Ex. V (email from Lee-Pang notifying Rhine of investigation on March 6).

3.    Rhine's Accountability Board Complaint

Two days after the FAA's investigation started (and on the same day he received an email from Lee-Pang notifying him of the investigation), Rhine filed a complaint with the FAA's

---

[3] Kristine Dillon is a labor and employment relation specialist at the FAA.

Accountability Board, alleging that Perez was reporting to management that he was a threat and making false allegations about him to create a negative impression of him. Pl. Dep., 162:9-25; Dkt. 23, Ex. W (allegation report form). The FAA's Accountability Board reviews management's responses to all allegations of incidents of harassment and other misconduct that created or may be expected to create an intimidating, hostile, or offensive work environment based on race, color, religion, gender, or other protected characteristic, or misconduct of a sexual nature or sexual harassment. MSPB Tr. Vol. I, pp. 43-44, 196 (Dillon).

Rhine also alleged that Perez's husband, Greg (a contractor in the FAA's Real Estate group), also made false statements about him, causing the Real Estate group staff not to handle his legitimate business requests appropriately. *Id*. Rhine claimed Perez acted to hide she had an "affair" with him while she was dating (but not yet married to) Greg. *Id*. The Accountability Board notified Rhine on March 11 his allegations fell outside the scope of its purview and it had referred the case back to management as an "other matter" to be worked at management's discretion. MSPB Tr. Vol. I, pp. 47-48 (Dillon testimony); Dkt. 23, Ex. X to Strong Decl. (see 3/11/19 email at Rhine-001632).

4.    Result of FAA's Investigation

The FAA completed its initial investigation of Rhine's after-hours activities on May 17. Dkt. 23, Ex. D to Strong Decl. (Lund Dep.), 207:20-208:12; Ex. Y (5/17/19 ROI). The FAA investigator, Jill Lund, found security footage showing Rhine entering the fifth-floor pantry eight times over a three-month period; three of those times, leaving with more bags than he entered with. *Id*. The FAA also conducted a scan of Rhine's government computer, where the agency found Rhine stored documents on the hard drive pertaining to his personal real estate business, DJR Ventures, as well as sports betting pools that he administered. *Id*. Rhine also stored

1    documents pertaining to his personal business on the FAA's shared drive. *Id*. In addition, he used

2    government printers and scanners to copy or scan documents related to DJR Ventures. *Id*. Rhine

3    also used his computer to store documents related to a master's degree he was pursuing. *Id*. The

4    investigation further revealed he accessed or modified coursework-related documents during

5    work hours. *Id*. The agency also gathered his entries into the FAA's timekeeping system,

6    CASTLE. *Id*.

7          Rhine contends he had been given permission to use his work computer for his graduate

8    studies. He also notes he had just been rated as registering perfect performance in his role just

9    two weeks prior to his alleged misconduct. Dkt. 63, Rhine Decl., ¶ 95.

10          5.    Request for Another Scan of Rhine's Computer

11          Holguin reviewed the information contained in the report of investigation. Dkt. 23, Ex. K

12    to Strong Decl. (MSPB Tr. Vol. V), pp. 154-155 (Holguin testimony). She requested the agency

13    complete another scan of Rhine's computer to determine if he had self-corrected his computer

14    usage after being interviewed by investigators on May 2, 2019. *Id*., p. 13. The agency completed

15    the supplemental investigation on July 19, 2019. Lund Dep., 194:7-24; Dkt. 23, Ex. Z to Strong

16    Decl. (7/19/19 ROI). The scan revealed that Rhine continued to access government resources to

17    complete coursework while on government time. *Id*.

18          6.    Removal of Rhine From Federal Service

19          On October 15, 2019, Holguin proposed to remove Rhine from his position at the FAA.

20    Dkt. 23, Ex. M to Strong Decl. Rhine responded to the notice of proposed removal by admitting

21    and apologizing for committing the infractions with which he was charged, stating in part that:

22          "I recognize now that using my government-issued laptop, as well as government
      copiers and printers, in connection with my outside endeavors was wrong. At the

23          time, I believed my use constituted permitted limited personal use, but I did not
      realize how much my usage was adding up over time."

"I regret that I engaged in non-work activities while on duty time. At the time, I did not see these activities as substantial enough to constitute misuse of government time, but I did not realize what the accrued impact was."

"I am deeply sorry for my inaccurate reporting of time and attendance. I had no intent to make any personal gain from the agency."

"I sincerely apologize for taking food that wasn't mine."

MSPB Tr. Vol. V., p. 15 (Holguin); Dkt. 23, Ex. AA to Strong Decl. (10/30/19 Rhine response to proposed removal). Holguin decided to remove him from federal service on November 22, 2019. *Id.*, Ex. N to Strong Decl. Holguin acknowledged Rhine's reply to the proposed removal notice but did not find his responses credible. *Id*. She further noted that after the FAA investigators interviewed him, and "well aware of the subjects of the official investigation, I noticed that you had virtually no change in the manner in which you used your government furnished equipment or duty time" and "that you used a large portion of your duty day, working on your Master's degree." *Id*. Concerning time and attendance, Holguin remarked Rhine had not provided evidence to refute any of the 33 specifications and that "it appears you have accurately recorded your time on some days, but not others, and as stated in my proposal to you, I cannot help but wonder if you were attending to personal real estate transactions." *Id*. Holguin later amended the notice of removal to remove some specifications about Rhine's time and attendance, but otherwise sustained all the charges as well as the decision to remove him. Dkt. 23, Ex. O to Strong Decl. (12/5/19 amended removal ltr.).

## STANDARDS OF REVIEW

The standard of review for statutory discrimination claims (including retaliation) is *de novo*. *See* 5 U.S.C. § 7703(c); *see also id*. § 7703(b)(2) (cross-referencing § 7702, which lists the

federal discrimination statutes).[4] Thus, the usual standards under the relevant Federal Rules of Civil Procedure apply to Rhine's Title VII claims herein.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially demonstrate the absence of any genuine issue of material fact for trial, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), after which the burden shifts to the opposing party to identify specific material facts that are genuinely disputed, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Courts assessing a summary judgment motion view the facts and draw reasonable inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A factual dispute must be genuine and not "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id*. at 380. Mere assertions in legal papers cannot create a genuine dispute. *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). There must be evidence on which the jury could reasonably rely to find for the non-movant. *Liberty Lobby*, 477 U.S. at 252.

<u>DISCUSSION</u>

A.    <u>Disparate Treatment Claim</u>

A plaintiff in a Title VII case must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, the burden shifts to the defendant to articulate a legitimate,

---

[4] In contrast to the *de novo* review of statutory discrimination claims, a court must affirm a MSPB decision regarding an adverse employment action unless it is "arbitrary, capricious, an abuse of discretion, not in accordance with law, obtained without proper procedures, or unsupported by substantial evidence." *Delgado v. Merit Sys. Prot. Bd*., 880 F.3d 913, 916 (7th Cir. 2018) (citing 5 U.S.C. § 7703(c)). As previously noted, Rhine is not challenging the MSPB decision relating to his removal. Dkt. 66-1, p. 15.

REPORT AND RECOMMENDATION GRANTING
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 11

nondiscriminatory reason for its employment decision. If the defendant provides such a reason, the burden shifts back to the plaintiff, who must demonstrate that this reason is pretextual. *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 889 (9th Cir.1994). "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case based on a *McDonnell Douglas* type presumption." *Id.*, 26 F.3d at 890-91.

To establish a prima facie case, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Absent direct or circumstantial evidence of unlawful discrimination, courts analyze summary judgment motions in disparate treatment cases under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thus, to establish a prima facie case of discrimination, Rhine must show (1) he belonged to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably. *Campbell v. Haw. Dep't of Educ*., 892 F.3d 1005, 1012 (9th Cir. 2018).

Defendant assumes, for purposes of this motion only, that Rhine can meet the first two elements. Defendant also assumes that the adverse action claimed by Rhine is his removal from federal service. Rhine contends the adverse action is placing him "under intensive scrutiny, restricting his movements, and an unwarranted investigation leading to removal. Dkt. 62 at 20. However, Rhine cannot demonstrate that the FAA's investigation into his conduct was an "adverse employment action" giving rise to a prima facie case of disparate treatment.

(1)    Adverse Employment Action

Rhine alleges FAA officials discriminated against him when they initiated the

investigation that eventually uncovered his misconduct. Rhine claims his second-line manager Van Allman relied on Perez's report of encountering Rhine at the kitchenette to start an investigation, while ignoring Rhine's request for an investigation of Perez's alleged negative statements about him. Dkt. 23, Ex. A to Strong Decl., Pl. Dep., 37:4-44:19.

"While an investigation may in some instances be considered an adverse employment action, an employer is 'required … to investigate when it receives credible allegations of … misconduct[.]'" *Williams v. Modly*, 796 F. App'x 378, 380 (9th Cir. 2020) (quoting *Campbell*, 892 F.3d at 1022). Here, the FAA had credible concerns about Rhine's conduct (Rhine's long hours at the FAA building, potential misuse of government time and equipment, and theft), and the investigation bore out those concerns, the investigation is not an adverse employment action. *Williams*, 796 F. App'x at 380 ("We conclude the allegations of misconduct, later corroborated by Williams, were credible and justified both the investigation and the issuance of the Letter of Caution. For this reason, the investigation cannot be considered an adverse employment action").

### 2.    Similarly Situated Employee

Assuming the FAA's investigation of Rhine constitutes an adverse action, Rhine's claim of disparate treatment fails because he has not shown the FAA treated similarly situated employees not in his class (sex or race) more favorably. *Campbell*, 892 F.3d at 1015. Rhine must identify other employees outside his sex (or race) that were similarly situated "in all material respects" who were given preferential treatment by the FAA; they must "have similar jobs and display similar conduct" to be similarly situated. *Id*. Rhine must show that allegedly similarly situated employees are similar "in all material respects," which includes examining all of Rhine's misconduct. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *see also Morris v. Mayorkas*, Case No. 20-1174-MWF, 2021 WL 3579361, at *4 (C.D. Cal. June 29, 2021) (holding "the

1  plaintiff and comparators do not display similar conduct if they were not involved in the same

2  combination of offenses") (citing *Ingram v. Pac. Gas & Elec. Co.*, 690 F. App'x 527, 530 (9th

3  Cir. 2017)). Rhine bears a burden, albeit minimal, to come forward with evidence to meet his

4  prima facie case at summary judgment; if he cannot, summary judgment should be granted. *See*,

5  *e.g.*, *Beeman v. Mayorkas*, Case No. 21-235-MJP, 2022 WL 4120150, at *6 (W.D. Wash. Sept.

6  9, 2022) (granting summary judgment where plaintiff failed to produce evidence of similarly

7  situated employees).

8        Rhine argues that "FAA employees similarly situated to [him] engaged in many of the

9  same behaviors, *e.g.*, time and/or attendance issues, personal use of computer[,] presence in the

10  building after hours," and alleges that Rhine's supervisor, Monica Holguin, did not terminate

11  them for such conduct. Dkt. 66-1, p. 21. Rhine asserts that "at least five other PIMs with my

12  same duties under Mr. Van Allman also had their computer and time use investigated at the same

13  time as me and were reviewed by the same Human Resource Specialist, but no other person

14  received more than a warning for discipline even though they were engaging in pools for

15  sporting events." Dkt. 63, ¶ 94. Rhine also cites to evidence of an unnamed female using the

16  phone for personal use and a management inquiry on an unnamed individual who was running a

17  business. *See* Dkt. 64, Rose Decl., Ex. K at 20:3 – 21:8; 58:8-59:3. Finally, Rhine names Corey

18  Glaze, Thomas Nguyen, Kevin Nguyen, Andrew Edstrom, Mark Nagle as having misused

19  government computers (*id.*, Rose Decl., Ex. V at 203:24-206:17). However, Rhine has produced

20  no evidence that these individuals were similarly situated to Rhine or that they (with the

21  exception of one unidentified female), were in a different class than him.

22        Rhine has also failed to show that similarly situated employees not in his class were

23  treated more favorably. First, Rhine's removal was based on several misdeeds, including time

and attendance, personal use of his government computer, stealing other people's food from

office refrigerators, misusing government time and equipment to run a personal business,

completing graduate coursework, and organizing gambling pools. Dkt. 23-27 (Ex. AA to Strong

Decl.). Moreover, he continued this behavior even after FAA investigators questioned him about

it. Dkt. 23-14. Thus, his cumulative misconduct distinguishes him from any of the purported

individuals he claims are similarly situated. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003)

(holding that plaintiff failed to establish a prima facie case, reasoning that "[a]lthough these

employees did commit serious violations, it appears none amassed a record of misconduct

comparable to Leong's").

Rhine's claim of disparate treatment appears to center primarily on Perez – *See* Dkt. 64,

Rose Dec. Ex. H at 31:7-15 (Altman was aware of Perez's complaint (stemming from 3/2/2019)

and his complaint of the same incident, but only investigated Perez's claim even though he had

claimed on numerous occasions that Perez had been sexually harassing him); *id.*, 45:16-24 (he

and Perez were similarly situated "in that one circumstance" because they were in the same

office building, on a weekend, outside normal hours, and he was on Perez's floor – he was

investigated for being on her floor and she was not being investigated for being on his floor).

However, Perez is not similarly situated to Rhine. In 2019, they worked in different jobs

at the FAA – Perez is an attorney while Rhine was a PIM. Pl. Dep., 26:15-27:10; MSPB Tr. Vol.

II, pp. 174 (Perez). They never worked in the same line of business. *Id.*, p. 176. Holguin and Van

Allman were never Perez's supervisor. *Id.*, p. 183. Also, even if Perez were in a similar job to

him, Rhine cannot point to evidence that she engaged in the same or similar combination of

offenses that he did, *i.e.*, she misused government time or equipment, misrepresented her time

and attendance, or took food that was not hers from the refrigerators. Instead, Rhine focuses on

that both he and Perez were at the FAA building on a Saturday and on some prior occasion, she visited his floor. Pl. Dep., 45:14-46:6. This is not a valid comparator.

Rhine's inability to identify a valid comparator is fatal to his disparate treatment claim and summary judgment is appropriate. *See*, *e.g.*, *Griffin v. Boeing Co.*, Case No. 13-38-RAJ, 2015 WL 13333180, at *4 (W.D. Wash. June 25, 2015) (holding "because plaintiff fails to identify any similarly situated male coworkers who received more favorable treatment, she fails to carry her prima facie burden and her claim fails as a matter of law").

3.    Legitimate, Non-Discriminatory Reason

Although Rhine has not made a prima facie case for discrimination, the Court notes summary judgment is appropriate even if the Court reaches the second and third steps of the *McDonnell Douglas* framework because the FAA has shown a legitimate, non-discriminatory reason for Rhine's termination. *See Burdine*, 450 U.S. at 253. The FAA's investigation uncovered numerous offenses Rhine committed in 2018 and 2019, *i.e.*, (1) misusing government property; (2) misusing government time; (3) misreporting time and attendance; (4) theft; and (5) lack of candor during the investigation. Dkt. 23, Strong Decl., Exs. N, O. Rhine acknowledged committing the first four offenses (*id.*, Ex. AA).

Other courts in this district have found that similar offenses constituted legitimate, non-discriminatory reasons to terminate employees' employment. *See*, *e.g.*, *Heyne v. Caruso*, 69 F.3d 1475, 1478-79 (9th Cir. 1995) (noting that showing up late for work on two consecutive mornings qualifies as a legitimate, non-discriminatory reason for termination); *Silbaugh v. Buttigieg*, Case No. 17-1759-RSM, 2021 WL 3565431, at *8 (W.D. Wash. Aug. 21, 2021) (finding that misleading EEO investigators constituted legitimate reason to remove plaintiff, an FAA employee), *aff'd*, 2022 WL 1641696 (9th Cir. May 24, 2022); *Caldwell v. Boeing Co.*, Case

No. 17-1741-JLR, 2019 WL 1556246, at *8 (W.D. Wash. Apr. 10, 2019) (noting that courts typically find excessive personal use of the Internet at work is a legitimate, non-discriminatory, non-pretextual basis for termination) (citing cases); *McDermott v. Blank*, Case No. 12-2042-MJP, 2014 WL 33981, at *3 (W.D. Wash. Jan. 6, 2014) (improper use of government property was legitimate reason to terminate plaintiff); *Green v. Seattle Art Museum*, Case No. 07-58-MJP, 2008 WL 2180144, * (W.D. Wash. May 22, 2008) (tardiness and violating the employer's rules of conduct were legitimate reasons for termination); *see also Guyton v. Novo Nordisk, Inc*., 151 F. Supp. 3d 1057, 1078 (C.D. Cal. 2015) (finding legitimate reason when company put forward evidence it fired plaintiff for stealing and not being truthful during investigation).

Rhine's claim also fails because he cannot show the FAA's legitimate, non-discriminatory reasons to remove him were a pretext for discrimination. Rhine argues that he has "established inconsistencies in the FAA's failure to adhere to its own investigation policies and practices," which he claims is relevant to pretext. Dkt. 66-1, pp. 22-23.

However, Rhine must "put forward specific and substantial evidence challenging the credibility of the employer's motives." *Mayes v. WinCo Holdings, Inc*., 846 F.3d 1274, 1282 (9th Cir. 2017). "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case based on a *McDonnell Douglas* type presumption." *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 890-91 (9th Cir. 1994).

Rhine's allegations of pretext do not create a genuine issue of material fact. Rhine relies on his own conclusion the FAA deviated from its security investigation protocols when investigating his misconduct. Dkt. 66-1, pp. 22, 31 (citing Dkt. 63, ¶¶ 100-104); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 n.6 (9th Cir. 2006) ("a plaintiff may not …

create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that

the challenged employment action was unnecessary or unwarranted"). Rhine argues without

evidence that the FAA did not conduct a thorough investigation. Dkt. 63, ¶ 101. Rhine next

argues the FAA should not have started an investigation on him because being discovered at a

common area on a weekend was not a "reportable incident" pursuant to a FAA Order concerning

facility security management. Dkt. 63, ¶ 102. Rhine also contends the FAA could not investigate

whether he took other employees' food because an FAA Order on personal property

management defines "personal property" as excluding "consumables" such as food. *Id*.

 Rhine fails to show how protocols for personal property and facility security management

are relevant or define the scope of an internal investigation into employee misconduct. Rhine

feels the FAA's investigation of him was "fundamentally flawed" and all he wanted was his

concerns about Perez to be more "closely examined" but he provides no explanation to refute

that he misreported his time and attendance, took food that was not his, and misused government

time and equipment to run a personal business, go to graduate school, and organize gambling

pools. Dkt. 63, ¶ 104. Rhine's arguments are little more than his subjective belief that discipline

was not warranted.

 Rhine also does not address that he has no evidence that the decisionmaker, Monica

Holguin, did not honestly believe the reasons for her decision. *Villiarimo v. Aloha Is. Air, Inc*.,

281 F.3d 1054, 1063 (9th Cir. 2002) (in evaluating evidence of pretext, holding that the inquiry

is not whether Defendant's justifications were "objectively false," but only whether Defendant

"honestly believed its reason for its actions," even if others might think the reasons "foolish or

trivial or even baseless"). Holguin had Rhine's written reply to the notice of proposed removal

where he stated that he committed at least four of the infractions cited. Dkt. 23-27; *see also*

REPORT AND RECOMMENDATION GRANTING
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 18

Dkt. 23-11 (Ex. K to Strong Decl.), pp. 17-21. Holguin requested a second scan of his computer to determine if Rhine had self-corrected his conduct but determined that removal was appropriate when that scan showed Rhine was still engaging in the same misconduct. Dkt. 23-11, pp. 12-13. Rhine may now seek to discredit the investigation that uncovered his misconduct and state a desire that his ex-girlfriend be investigated, but he offers nothing to suggest that Holguin did not honestly believe that his contemporaneous admissions could not be accepted as true, which the second scan of his computer confirmed. Thus, Rhine fails to show the FAA's reasons to remove him were pretext.

Based on the foregoing, the Court concludes that Rhine has failed to establish an adverse employment action or a similarly situated employee who was treated more favorably. Rhine has also failed to present evidence sufficient to raise a material question of fact as to Defendant's legitimate non-discriminatory reason to remove Rhine, and Rhine provides no evidence that the reason to remove him was a pretext for discrimination.

Thus, the undersigned recommends the Court grant Defendant's motion for summary judgment on Plaintiff's disparate treatment claim.

B.    Hostile Work Environment

To establish a hostile work environment, Rhine must show that "(1) he was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). The Ninth Circuit has also recognized a separate cause of action for a retaliatory hostile work environment. *Ray v. Henderson*, 217 F.3d 1234, 1244-45 (9th Cir. 2000).

REPORT AND RECOMMENDATION GRANTING
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 19

1    Rhine has not shown that any conduct was based on his sex. In his interrogatory

2  responses, Rhine identified no sex-based conduct that he claimed was part of his hostile work

3  environment claim, only alleging that any conduct was "in retaliation for disclosing concerns

4  about harassment, discrimination, and retaliation regarding Gina Perez, Greg Perez, and FAA

5  employees who were aware of past EEO complaint he made regarding Gina Perez." Dkt. 23-12

6  (Ex. L to Strong Decl.), Resp. to Interrog. No. 3.

7    Rhine now argues that Perez began the allegedly unwelcome conduct after he denied her

8  sexual advances and therefore, her conduct must be based on his sex. Dkt. 66-1, p. 25. Rhine's

9  explanation is unavailing. The most reasonable inference from this explanation is that there was

10  animosity between Rhine and Perez based on their prior relationship – a relationship between

11  two people who happen to be a man and a woman. Moreover, Rhine also acknowledged he was

12  not often sure of what Perez may have said about him, just that it left other coworkers with the

13  impression that he was a "predator," a "terrible person," or could not go to events where Perez

14  might be present, which fails to show that Perez's alleged conduct was severe or pervasive. *See*,

15  *e.g.*, Dkt. 23-1, 73:6-76:6, 79:3- 81:1, 85:9-86:6, 86:10-24.

16    Regarding a retaliatory hostile work environment claim, Rhine acknowledges any

17  derogatory comments Perez might have made about him predated his 2015 EEO complaint and

18  instead arose after he and Perez ended their relationship in 2014. Dkt. 23-1, 47:1-16 ("I let him

19  know that the problems between -- the problem with Gina continuing to make false claims …

20  against me, it stemmed back to 2014 when I had to file an EEO complaint about her in 2015");

21  *see also Rhine v. United States*, Case No. 21-876-RAJ-BAT, 2021 WL 6617461, at *1 (W.D.

22  Wash. Sep. 2, 2021) ("Plaintiff first became aware of 'false and defamatory' statements made by

23  Defendant Perez in October 2014…"). Thus, Rhine cannot establish that any comments Perez

1    may have made were in retaliation for his protected activities.

2        Without proof that any alleged comments were based on his protected activity or his sex

3    and that such comments were severe and pervasive, the undersigned recommends the Court grant

4    Defendant's motion for summary judgment on Rhine's hostile work environment and/or

5    retaliatory hostile work environment claim.

6    C.    Retaliation

7        To make a prima facie case of retaliation, Rhine "must show that (1) [he] was engaging

8    in protected activity, (2) the employer subjected [him] to an adverse employment decision, and

9    (3) there was a causal link between the protected activity and the employer's action." *Bergene v.*

10   *Salt River Project Agric. Imp. and Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001).

11   Furthermore, "Title VII retaliation claims must be proved according to traditional principles of

12   but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Courts

13   analyze retaliation claims under the *McDonnell Douglas* framework. *Villiarimo v. Aloha Island*

14   *Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.2002). If Rhine can establish a prima facie case, then

15   Defendant has the burden of production to articulate a legitimate, non-retaliatory reason for the

16   challenged action. *Bergene*, 272 F.3d at 1140-41. If Defendant meets that burden, Rhine must

17   show that the articulated reason is a pretext for retaliation. *Id.* (citations omitted).

18       To win on a Title VII retaliation claim, employees must show that their engagement in

19   protected activity—and not the employer's stated rationale—was the "but-for" cause of their

20   termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517, 186

21   L.Ed.2d 503 (2013). But-for causation is a heightened standard, requiring a substantial showing

22   from the employee to demonstrate pretext. *See Acosta v. Brain*, 910 F.3d 502, 514 (9th Cir.

23   2018) (finding the but-for causation is a "higher" standard than substantial or motivating factor

1    causation). This causation standard "requires proof that the harm would not have occurred in the

2    absence of—that is, but for—the defendant's conduct." *Burrage v. United States*, 571 U.S. 204,

3    211, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014) (simplified). In other words, the employee's

4    protected action must be "the straw that broke the camel's back." *Id*. at 211, 134 S.Ct. 881.

5           Rhine identifies his 2015 EEO complaint, his February 2019 late-night e-mail, and a

6    2019 Accountability Board complaint as examples of protected activity. Dkt. 66-1, pp. 28, 30.

7    His claim fails because he has not established a causal link between the protected activity and the

8    adverse action.

9           <u>2015 EEO Complaint</u>

10           Rhine cannot show causation between the 2015 EEO Complaint, filed four years before

11    the investigation that led to his removal, because it is too remote to give rise to an inference of

12    retaliation. *See*, *e.g.*, *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that

13    nine-month separation between date of complaint and adverse action does not infer causation)

14    (citing *Breeden*, 532 U.S. at 273 for proposition that temporal proximity must be "very close,"

15    and that even three- or four-months lapse is insufficient).

16           Rhine presents no other evidence sufficient to establish that his filing of the 2015 EEO

17    complaint led to the FAA's investigation and his subsequent removal based on the results of that

18    investigation. When asked whether the 2015 EEO complaint played a factor in Holguin's

19    decision-making, Rhine only refers to Fernandez and the other employees Holguin supervised

20    with time and attendance issues, inferring that she must have treated him differently because he

21    had prior protected activity. Pl. Dep., 124:23-126:5. However, Holguin testified that she only

22    learned of a prior investigation completed by the FAA when Rhine raised it in his written reply

23    after he received the notice of proposed removal. MSPB Tr. Vol. V, pp. 175, 195-96 (Holguin).

Rhine has no evidence to the contrary.

Rhine seeks to attribute retaliatory animus to his second-level supervisor, Van Allman, because he previously disclosed to Van Allman that he had filed an EEO complaint in 2015. In effect, Rhine seeks to establish a causal connection through a "cat's paw" theory by showing that an employee with a retaliatory motive influenced the removal decision. *Acosta v. Brain*, 910 F.3d 502, 515 (9th Cir. 2018). This theory does not support Rhine's claim. Even if Van Allman had a retaliatory motive based on the 2015 EEO complaint, Rhine cannot explain how it led to the investigation and his removal. Pl. Dep., 47:1-55:11. The evidence reflects that in 2015, Van Allman was not in Rhine's management chain and was soon to leave for Alaska to be a deputy regional administrator there. Dkt. 23, Strong Decl., Ex. C (Van Allman Dep.), 44:23-45:8. In addition, Van Allman testified he had no knowledge of the 2015 EEO Complaint other than when Rhine informed him of it in 2019. *Id*. 50:17-52:6.

Rhine argues that Van Allman should have started an investigation of Perez alongside the investigation of Rhine in 2019. Though it appears Van Allman played a role in starting the investigation of Rhine's conduct, there is no evidence that Van Allman played a role in the 2019 investigation itself or in Holguin's decision to remove Rhine based on the investigation's findings. Moreover, Van Allman had no way to know that when the investigation started in March 2019, it would reveal the many infractions that Rhine committed at work. *Cf. Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 807-09 (9th Cir. 2009) (holding that a supervisor's initiation of an investigation that led to plaintiff's removal was not a causal factor where the ultimate decision was based on thorough investigation independent of supervisor's influence); *accord Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (holding if an employer's independent investigation "results in an adverse action for reasons unrelated to the supervisor's original

1  biased action," then the employer will not be liable).

2      February 2019 Late-Night Email

3      Rhine assumes an e-mail stating "I'm fatigued of your team's 4 year history of false

4  claims that stem from continued sexual harassment," constitutes protected activity and the

5  FAA's investigation is an adverse action. The Court will assume, for purposes of this motion,

6  that the email constitutes a protected activity and the FAA's investigation constitutes an adverse

7  action. Even with these assumptions, Rhine's retaliation claim based on the e-mail still fails.

8      Rhine does not dispute he sent a late-night e-mail in February 2019, and the timing of

9  that e-mail had already raised concerns for FAA management about the amount of time he spent

10 at the office. *See* Dkt. 23-3 (Ex. C to Strong Decl.), 90:13-91:19. When the FAA again received

11 a report that Rhine was there outside of work hours (which he now acknowledges was to use

12 government equipment to complete personal school coursework), the FAA decided to look into

13 Rhine's long hours at the FAA building (to include any personal or personal business usage of

14 government equipment) as well as issues of potential theft and to determine if there was a threat

15 to Perez. Dkt. 23-3, 124:22-125:10; Dkt. 23-20 (Ex. T to Strong Decl.); Dkt. 63, ¶¶ 65-66.

16     Rhine argues that, to establish a causal link, "the plaintiff must show that the decision

17 maker who took the allegedly retaliatory action was aware of the plaintiff's protected activity,"

18 citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Dkt. 66-1, p. 30. He then

19 argues that because his second-line supervisor, Richard Van Allman, knew about his February

20 2019 late night e-mail, he has established causality for his prima facie case. While the Ninth

21 Circuit held that knowledge of a plaintiff's protected activity was essential, the Court also held

22 "the plaintiff must present evidence sufficient to raise the inference that [his] protected activity

23 was the *likely reason* for the adverse action." 686 F.2d at 796 (emphasis added). Rhine cannot

1    rely on a decision-maker's knowledge of his protected activity alone. He must show an actual

2    causal link between the protected activity and retaliatory activity. *Bergene*, 272 F.3d at 1140-41.

3    　　　　Moreover, an employer does not lose the ability to otherwise review an employee's

4    conduct and, if necessary, discipline the employee, merely because the employee has filed a

5    discrimination claim. *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985) (holding "an

6    employee is not protected by Title VII when he violates legitimate company rules, knowingly

7    disobeys company orders, disrupts the work environment of his employer, or willfully interferes

8    with the attainment of the employer's goals"). The FAA had legitimate reasons to investigate

9    Rhine and that investigation found Rhine violated legitimate company rules. Moreover,

10   contemporaneous with the notice of proposed removal, Rhine admitted to violating those rules.

11   　　　　<u>2019 Accountability Board Complaint</u>

12   　　　　Rhine claims retaliation based on the Accountability Board Complaint he filed March 6,

13   2019. However, at the time he filed the complaint, the FAA's investigation had already begun.

14   Thus, he cannot demonstrate a causal link, *i.e.*, that the Accountability Board Complaint *caused*

15   the FAA to investigate him. *See Handson v. Overlake Hosp. Med. Ctr.*, 10 Case No. 15-1772-

16   RSL, 2017 WL 1438037, at *7 (W.D. Wash. Apr. 24, 2017). In *Handson*, the employee filed a

17   discrimination complaint three days after an investigation of his computer had commenced.[5] The

18   Court granted summary judgment because "the fact that an adverse employment action occurred

19   after a complaint was lodged is 'immaterial' when the employer was already contemplating the

20   action." *Id*. (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) for proposition

21   "that an employer proceeds 'along lines previously contemplated, though not yet definitively

22

23   ──────────────────
     [5] Although *Handson* arose under the Washington Law Against Discrimination, courts apply the
     same standards to claims under Title VII and the WLAD. *See*, *e.g.*, *Griffin*, 2015 WL 13333180,
     at *19 (W.D. Wash. June 25, 2015).

1  determined, is no evidence whatever of causality'").

2      As in *Handson*, the FAA had begun its investigation of Rhine's computer two days

3  before he filed his Accountability Board Complaint. It was the investigation itself that uncovered

4  Rhine's activities while at work, which led to his removal. Thus, Rhine cannot show causality

5  and cannot make a prima facie case of discrimination based on the 2019 Accountability Board

6  Complaint. *See also*, *e.g.*, *Carrington v. City of Des Moines*, 481 F.3d 1046, 1051 (8th Cir. 2007)

7  (causation element of prima facie case of retaliation not established where plaintiff "engaged in

8  protected activity after supervisors began to investigate his job performance").

9      Rhine has failed to show an actual link between a protected activity and the alleged

10  retaliatory activity. Therefore, the undersigned recommends that Defendant's motion for

11  summary judgment on Rhine's claim of retaliation be granted.

12  D.    Disability Discrimination

13      Because Rhine raised a claim of disability discrimination before the MSPB and out of an

14  abundance of caution, Defendant addresses this claim in its summary judgment motion.

15  However, Rhine did not plead any claim in his Complaint under the Rehabilitation Act (29

16  U.S.C. § 791) that the FAA discriminated against him based on an alleged disability. Dkt. 1.

17  Rhine also did not address any such claim in his response to the summary judgment motion.

18                              CONCLUSION

19      Defendant's motion for summary judgment (Dkt. 22) should be **granted** and Rhine's

20  claims against Defendant should be **dismissed with prejudice**.

21                          OBJECTIONS AND APPEAL

22      This Report and Recommendation is not an appealable order. Therefore, a notice of

23  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **December 6, 2022**. The Clerk should note the matter for **December 7, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed ten (10) pages. The failure to timely object may affect the right to appeal.

DATED this 22nd day of November, 2022.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION GRANTING
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 27